.10295.   SHARP *v.* THE STATE.

STEPHENS, J. 1. It is well settled by repeated rulings of the Supreme Court and of this court that on a trial for murder, if there is anything deducible from the evidence or the defendant's statement that would tend to show manslaughter, voluntary or involuntary, it is not error for the court to instruct the jury on the law of manslaughter. Applying the above rulings to the facts in the instant case, the judge did not err in instructing the jury on voluntary manslaughter.

2. No error of law appearing, and as there was ample evidence to authorize the verdict, which has the approval of the trial judge, this court is powerless to interfere.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*

DECIDED JUNE 9, 1919.

Indictment for murder; from Berrien superior court—Judge Thomas. November 30, 1918.

Peter Sharp killed Henry Inman, and, under an indictment for murder, was convicted of voluntary manslaughter. Two eye-witnesses testified,—Dave Jackson for the State, and Oren King for the accused. Jackson, in his testimony, said: "I saw Peter Sharp at Oren King's dwelling house. . . Henry Inman came and sat down there, was talking, and Peter Sharp said, 'Well

that little you owe me, I want it.  I am going away Friday, and want what you fellows owe me.'  He was talking to Henry Inman, and he laughed and said, 'Do you want it to-day, Pete?  I have not got it with me, have not got over 50 or 75 cents.'  Pete said, 'Give me that then.'  Henry said, 'I could not give you the last cent I got; I have got to have something;" and he laughed and said, 'I guess I better go;' and Pete said, 'Well, aren't you going to pay me?'  They had spoken a word or two, and Henry said, 'I reckon I will have to go before I have to kill me a man;' and Pete said, 'I can beat you doing that,' and reached round and got his gun, a shotgun.  I ran and the lamp went out.  .  '.  The gun fired before the light went out.  Peter was holding it when it fired, pointed straight at the breast of Henry Inman, about three or four feet apart.  Henry Inman did not have anything in his hand as I know of.  .  .  Henry Inman did not do anything to Peter Sharp just at that time more than I have just told you.  Henry was standing after he spoke that word,—'before I have to kill me a man.'  He made no more threats than I have said.  That was all that was done there up to the shooting, that I heard.  .  .  I came back in about five minutes.  .  .  Henry was lying right where he had fallen right backwards;  .  .  he was dead.  .  .  Henry Inman had put his hand in his pocket .  .  and had not taken it out when he said he had better go or he would have to kill him a man.  Inman was sitting right by one door and Pete by the other.  He did not start out the door next to him,—looked like he made a move to go around the other door toward Pete Sharp, still had his hand in that position, looking toward Pete, and Pete said, 'I will beat you doing that,' and reached for his gun, and instantly the gun shot.  .  .  It was Henry Inman's left hand, and he put it in his side pocket, did not put any hand in his hip-pocket.  .  .  He was in his shirt-sleeves at that time; and there had been no more cross words between them than I have said.  They did not seem to be perfectly friendly;  .  .  they made one or two curse words, both of them did.  Henry spoke first.  Peter Sharp brought the gun there that did the shooting."  The witness said that after Henry Inman had fallen "one of them said, 'Here is 50 cents,' and picked it up and laid it on him."

Oren King testified:  "I was at my home the night Henry

Inman was killed there. . . Sharp came first; . . then Henry Inman came. . . It was something like half an hour before the trouble happened. . . The first I noticed was when Inman said he guessed he had better go before he had to kill a man. I heard a scuffling. I looked around at Sharp. I heard a scuffle, heard him just pick up his chair. Henry was sitting by one door and Sharp at the other one, next to the stove; . . Inman looked like he was going to come out the door by Sharp. He had to come round the table first to make his turn toward Sharp, and was coming in that direction. There was another door right by him that he could have gone out at, but he did not make any effort to go out that door. . . I was looking at Sharp and did not have time to see his hand. I do not remember hearing Sharp say anything at that time. They had been talking a little that night,—did not notice in particular. It seemed like Inman did not like Pete very much, and anywhere they met in the road they would have some little words. It seemed like Inman would be in the wrong on these occasions; they would be quarreling. . . Henry Inman had a pistol; . . he did not have it that night; the reason I know is, when the sheriff came he searched him and did not find it. . . When I heard the scuffle I glanced back, saw Henry Inman going round the table toward where Pete was,— looked like to come out the door by him. Pete had got his gun. About that time the gun fired, which put the light out, and I went out too. . . Just before the shooting one said, 'I better go before I have to kill a man,' then got up and started out the door. . . The door nearest the stove was the one always used and the one he started through. He said he had better go before he had to do something, and then got up and started. When he shoved his chair back after he made the remark, I looked around about that time at Sharp, and the gun fired. At the time Inman said he better be going before he would have to shoot, hurt, or kill somebody, Pete did not have his gun then, and did not get it until Inman got up and started to go, and then he got it from the floor somewhere and shot him just as quick as he could point it at his breast, and Inman fell right where he was shot. . . I have been present along the road when Henry Inman and Peter Sharp would meet in the road and have some words; that was something like a couple of weeks prior to the shooting." Another

witness testified that after the killing he picked up fifty cents on the floor near where Henry Inman was lying. It was about four or five inches from his pocket, on the left side, and between his hand and his pocket. It was testified that Henry Inman had the reputation of being a little overbearing, and that the defendant was peaceable.

The defendant's statement at the trial was as follows: "This here man, I asked him about the money. He held me up on the road and took $7.53 away from me. He had a 32 four-inch-barrel lemon-squeezer pistol. And I asked him for that money, I thought he had it that night. If I had not I would not have shot him for nothing in the world. That is the money I wanted from him. There at the house that night I asked him for my money, and when he threw his hand in his pocket I thought he was going after his pistol. I knowed he had it, because he kept it all the time.

He had it in his clothes, and he threw his hand back there [indicating to his side or hip-pocket], and I thought he was getting his pistol. I reached and got my shotgun and shot him."

It was contended that under the evidence and the defendant's statement, he was either guilty of murder or not guilty of any crime, and that it was not proper to charge the jury on the law of voluntary manslaughter.

*J. P. Knight,* for plaintiff in error, cited: *Ga. R.* 97/428 (2); 104/502 (2); 109/506 (1); 113/279 (1); 122/737 (1); 123/548 (1); 125/48 (4), 745 (1); 135/351 (4); 138/336 (1), 767 (1); 139/594 (2); 140/225 (7); *Ga. App. R.* 2/414; 3/606; 4/486 (3, 4).

*Clifford E. Hay, solicitor-general,* contra, cited: *Ga. R.* 56/113; 76/478; 90/118 (1); 109/142 (1); 130/865; 133/76 (1) 77; *Ga. App. R.* 9/559, 569.